[Civ. No. 16432.   Second Dist., Div. Three.   Dec. 22, 1948.]

OTTO GEORGE LASKE, Respondent, v. LEO LAMPA-
SONA et al., Appellants.

Rinehart, Merriam, Parker & Berg for Appellants.

Joseph A. Sprankle, Jr., for Respondent.

SHINN, P. J.—The appeal is from a judgment in an action for specific performance instituted by the vendor under an agreement for the sale of real property, which judgment decreed specific performance of the agreement and directed the escrow holder to deliver to the defendants, vendees, the deed of plaintiff, vendor, and to deliver to plaintiff the sum of $17,500, and a note of defendants for $17,500 secured by a trust deed on the property.

The agreement was in the form of escrow instructions to a bank. Leo Lampasona and Nicholas Abraham, herein referred to as defendants, deposited in escrow $17,500 and their promissory note for $17,500 payable to Otto George Laske, with directions to deliver the money and instruments to Laske, when title to the residential property in question should be transferred to them, together with certain shares of water stock, provided instruments had been filed for record entitling the escrow holder to procure policy of title insurance of Title Insurance & Trust Company, showing title vested in the purchasers. Laske, as seller, approved the instructions of the buyers and placed in escrow a deed which conformed to their instructions. The buyers agreed to place in escrow a fire insurance policy with liability of $20,000, of which at

least $17,500 would be payable to Laske. The instructions were dated October 25, 1946, and contained the following provision: "If you are unable to comply with these instructions on or prior to January 15, 1947, you will comply as soon thereafter as possible unless a written demand for return of money or instruments by the parties to this escrow is received by you subsequent to such date and prior to the recording of any instruments provided for herein." Defendants did not procure or place in escrow the insurance policy. The escrow instructions of the purchasers, approved by plaintiff, contained·the following: "As a notation only without responsibility on part of Bank of America, possession is to be given buyer at close of escrow."

The court found that the contract was fair, just and reasonable, that the value of the property was commensurate with the price to be paid by the defendants, and that plaintiff had performed and complied with all of the terms and conditions of the contract upon his part to be performed. It was also found that defendants had deposited the full agreed purchase price of the property consisting of $17,500 in cash and the note and trust deed; that they had failed to deposit the policy of fire insurance, but that·their agreement so to do was for the benefit of plaintiff, and that plaintiff had waived performance by defendants with respect thereto. It was found that on the 13th day of January, 1947, the escrow was in condition to be closed in accordance with the instructions except for the failure of defendants to deposit the fire insurance policy; that on said date defendants delivered to the escrow holder written demand for the return to them of all moneys and instruments theretofore deposited by them in escrow.

The answer of defendants alleged certain facts which they relied upon to justify their refusal to complete their purchase. It was alleged that plaintiff had represented as a fact, and not as an opinion, that the property was worth more than $40,000, whereas it was worth not more than $20,000; that plaintiff had falsely represented that the reasonable rental value of a house on the rear of the lot was $50 per month, whereas the property was then rented for $25 a month. It was further alleged that the defendants had recently come from Massachusetts with their families and that plaintiff represented to them that the premises in question would be available for their immediate use, and also orally agreed that upon the completion of the purchase he would transfer to defend-

ants the furniture contained in an apartment on the rear of the lot. It was alleged that said apartment was then being occupied by one Kidd, that plaintiff had taken no steps to dispossess said tenant, that plaintiff did not at any time prior to January 15 offer to deliver possession of the property to defendants, nor did he, prior to January 15, 1947, deliver into escrow a bill of sale of the furniture in said apartment.

The court found that plaintiff agreed to deliver possession of the property at the close of escrow and not before, and had been at all times ready, able and willing to deliver possession as agreed, upon compliance by defendants with the terms of the agreement. It was found that the rear apartment was occupied by a tenant, that defendants had knowledge of that fact, and also knew that the tenant could not be evicted at that time; that defendants also knew that the building in the rear was registered with the Office of Price Administration at a rental of $50 per month, and that it was the intention of defendants to receive possession of the premises subject to the rights of the tenant. It was found that plaintiff had not agreed to sell or transfer to defendants any furniture or personal property and there was substantial evidence to support this finding.

Defendants' principal contention on the appeal is that if any relief was to be granted the judgment should not have directed delivery of the money and instruments by the escrow holder, but should have provided that if they refused to accept a deed and pay the purchase price the property should be sold and the sum received from the sale, not to exceed $35,000, be paid to plaintiff. Defendants maintain further that there was insufficient evidence to support the findings that the value of the property was commensurate with the price agreed to be paid and that the contract was just and reasonable. It is also claimed that the evidence was insufficient to support the findings in some minor particulars.

It is not contended that a vendor of real property may not have specific performance of a valid agreement of purchase. It is, of course, well established that he has such right. Section 3384, Civil Code, provides: "Except as otherwise provided in this article the specific performance of an obligation may be compelled." Section 3390 specifies the obligations that cannot be specifically enforced, and section 3391 specifies the conditions under which specific performance cannot be enforced. Neither section states any exception that would forbid specific performance upon the findings above

mentioned. Section 3394 provides: "An agreement for the sale of property cannot be specifically enforced in favor of a seller who cannot give to the buyer a title free from reasonable doubt." ▇ The right of a vendor to specific performance under the provisions of the code does not differ from that accorded him under the equity practice. (Pomeroy's Equity Jurisprudence (5th ed.) § 2216; Pomeroy's Equitable Remedies (2d ed.) §§ 747, 822; 49 Am.Jur. § 94, p. 110; 58 C.J. § 240, p. 1029. See *Waratah Oil Co.* v. *Reward Oil Co.*, 23 Cal.App. 638, 641 [139 P. 91]; *Glock* v. *Howard & Wilson C. Co.*, 123 Cal. 1, 7 [55 P. 713, 69 Am.St.Rep. 17, 43 L.R.A. 199].)

▇ Under their first assignment defendants say: "it has been the well-established law in California for years that the only decree which can be entered in a specific performance action involving real estate is one requiring the purchaser to accept a conveyance of the property and pay the purchase money, or, in the alternative, upon his failure thus to do, directing that the subject property be sold to satisfy the purchase money judgment." In support of this proposition, they cite *Sparks* v. *Hess,* 15 Cal. 186, 194; *Cohn* v. *Valentine,* 88 Cal.App. 430, 438 [263 P. 846]; and dicta appearing in *Maltby* v. *Conklin,* 50 Cal.App. 201, 205 [195 P. 280]. The cited cases indicate that it is proper in some circumstances to enter a decree in the alternative, but they do not hold that it is the only form of decree to which a vendor may be entitled. In *Sparks* v. *Hess, supra,* the court makes the statement, upon which the cited passages in the Cohn and Maltby cases are based, that "A vendor retaining title may . . . sue at law for the *balance of the purchase money,* or file his bill in equity for the specific performance of the contract, and take an alternative decree that if the purchaser will not accept the conveyance and *pay the purchase money,* the premises will be sold to raise such money, and that the vendee pay any deficiency remaining after the application of the proceeds arising upon such sale." The words we have italicized imply, and the facts of the Sparks and Cohn cases clearly illustrate, that this rule was enunciated with reference to cases where all or part of the purchase money remained unpaid. The court obviously could not compel a defaulting purchaser to tender the balance due if he should prove to be unable or unwilling to do so; and accordingly, out of practical considerations, a foreclosure of the vendor's reserved lien by sale of the property has been decreed as an alternative form of

relief in such cases. Any requirement that a decree, where granted, must be in this alternative form, should, of course, be confined to the limits set by its function and purpose. (Civ. Code, § 3510.) In asserting their claimed right to an alternative decree in the present case, defendants not only overlook the essentially practical basis upon which such relief is granted, but also ignore the nature of the transaction and the obligations which they assumed. They did more than merely enter into a wholly executory agreement of purchase. Pursuant to their agreement they deposited in escrow the entire purchase price, authorizing their agent, the escrow holder, to make delivery thereof upon the conveyance of title to them as called for by their instructions. It is evident that the full price being in the hands of the escrow holder, its delivery to the vendor can be compelled directly by the court in fulfillment of the terms of the contract; and since the fundamental reason for granting alternative relief is absent, defendants' claim to such a decree cannot be sustained.

■ The direction for delivery of the documents and the money by the escrow holder was appropriate for the additional reason that when the terms of the escrow had been complied with by the seller and the buyers, title to the purchase money and the note and trust deed passed to the seller, and the escrow holder then held them as his agent. (*Bennett* v. *Steinman*, 84 Cal.App.2d 494 [190 P.2d 987], and cases cited; *Greenzweight* v. *Title Guar. & Tr. Co.*, 1 Cal.2d 577 [36 P.2d 186].)

■ The court's findings that the contract was fair, just and reasonable, and that the value of the property was commensurate with the price, are supported by substantial evidence. Plaintiff testified that the property had a market value of $40,000. His testimony constituted substantial evidence of that fact. (*Los Angeles County F. C. Dist.* v. *Abbot*, 24 Cal.App.2d 728, 737 [76 P.2d 188]; *Watterson* v. *Knapp*, 35 Cal.App.2d 283, 289 [95 P.2d 154]; *Minikin* v. *Hendrix*, 15 Cal.2d 338, 341 [101 P.2d 473].)

■ It was not necessary that plaintiff should have expressly waived his right under the agreement to have the fire insurance policy issued in his favor. There was evidence that on January 13, he informed defendants that they might have possession of the property on January 15, and this offer was not accompanied by a demand for the insurance policy. The judgment did not direct defendants to procure

the policy and plaintiff's acceptance of the judgment, in itself, constituted a waiver of his right. Moreover, defendants may not rely upon their own default as a defense against plaintiff's right to specific performance.

The judgment does not require that defendants be furnished with a policy of title insurance of Title Insurance & Trust Company in its usual form with a liability of $35,000 covering the property in question, showing title vested in Leo Lampasona and Nicholas Abraham, subject to second half general and special taxes for the fiscal year 1946-1947, including any special district levies, payments for which are included therein and collected therewith; any covenants, conditions, restrictions, reservations, rights, rights of way and easements of record; and the deed of trust of defendants previously placed in escrow, nor does it require the delivery of 11 shares of the capital stock of Lincoln Avenue Water Company issued in the names of the vestees, all as provided in the instructions.

The judgment is modified by the addition of the provisions mentioned and as modified is affirmed, respondent to recover costs.

Wood, J., and Vallée, J., concurred.

A petition for a rehearing was denied January 20, 1949, and appellants' petition for a hearing by the Supreme Court was denied February 17, 1949. Schauer, J., voted for a hearing.